# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

BIG SHOULDERS CAPITAL LLC,

    Plaintiff,

v.

SAN LUIS & RIO GRANDE RAILROAD, INC.
and MT. HOOD RAILROAD COMPANY,

    Defendants.

No. 19 C 6029

Judge Thomas M. Durkin

## MEMORANDUM OPINION AND ORDER

On September 12, 2019, the Court entered an Order Appointing Receiver over the Defendants and their assets. That order contained an anti-litigation injunction barring all persons and entities from commencing any action that would affect the receivership estate. On October 16, 2019, creditors Ralco, LLC, South Middle Creek Road Association, and San Luis Central Railroad Co. filed an involuntary bankruptcy petition against Defendant San Luis & Rio Grande Railroad in the United States Bankruptcy Court for the District of Colorado, despite knowing of the Order Appointing Receiver and its contents. Upon the Receiver's emergency motion to determine the effect of that petition on this Court's jurisdiction to proceed, the Court held that the creditors violated the anti-litigation injunction and declared the petition *void ab initio* and of no force and effect. The petitioning creditors subsequently filed a motion for reconsideration or, in the alternative, for an order granting leave to file an involuntary bankruptcy petition [R. 101]. That motion is granted in part and denied in part.

1

## Background

Defendant San Luis & Rio Grande Railroad ("SLRG") operates a 150-mile long railway in Colorado that primarily transports grain, minerals, rock products, and produce. Mt. Hood Railroad Company provides freight services and offers excursion and dinner trains along a 22-mile long track in Oregon (SLRG and Mt. Hood will collectively be referred to as the "Defendants"). SLRG wholly owns Mt. Hood, and Permian Basin Railways, Inc. wholly owns SLRG. Iowa Pacific Holdings, LLC, in turn, wholly owns Permian Basin. Iowa Pacific provides management services to all of its subsidiaries (including the Defendants), such as insurance, payroll, human resources and benefits.

In 2017, Plaintiff Big Shoulders Capital entered into a Loan and Security Agreement with Iowa Pacific and its material subsidiaries, including SLRG and Mt. Hood (the "Borrowers"). The Loan Agreement granted Big Shoulders a security interest in all of the Borrowers' personal property assets (the "Collateral"), and further imposed joint and several liability on the Borrowers. The Borrowers defaulted, and Big Shoulders sued SLRG and Mt. Hood to recover the money owed. In addition, Big Shoulders moved for the appointment of a receiver, due to the Defendants' alleged inability to operate their business and maintain and preserve the Collateral. The Defendants did not oppose Big Shoulders' motion, and the Court

entered an order appointing Novo Advisors (the "Receiver") as receiver over the Defendants on September 12, 2019 ("Order Appointing Receiver"). R. 19.[1]

> Paragraph 5 of the Order Appointing Receiver provides in relevant part:
>
> On the Effective Date, Defendants (and, where applicable, Defendants' officers, shareholders, directors, partners, assigns, agents, servants, employees, accountants, and attorneys), all persons and entities claiming by or through Defendants, and all other person and entities . . . except by leave of the Court, shall be enjoined, restrained, stayed, and prohibited from (a) commencing, prosecuting, continuing or enforcing any suit or proceeding against or affecting Defendants or any part of the Receivership Assets, except that such actions may be filed to toll any statutes of limitations[.]

R. 19 ¶ 5(ii). On October 16, 2019, unsecured creditors Ralco, LLC, South Middle Creek Road Association, and San Luis Central Railroad Co. (the "Petitioning Creditors") filed an involuntary chapter 11 petition against SLRG in the United States Bankruptcy Court for the District of Colorado (the "Petition"). Under 11 U.S.C. § 362(a), the filing of a bankruptcy petition "operates as a stay, applicable to all entities, of the continuation . . . of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before" the bankruptcy petition. 11 U.S.C. § 362(a).

On October 17, the Receiver filed an emergency motion to determine the effect, if any, of the automatic stay on this Court's jurisdiction to proceed. R. 77. The following day, the Court held a status hearing so that the attorneys responsible for

---

[1] The Court subsequently granted the Receiver's motions to expand the receivership to include twenty of the Defendants' corporate affiliates and their assets. *See* R. 23; R. 56. Each of the twenty affiliates consented to their inclusion. Sandton Rail Company, LLC has appealed the Amended Order Appointing Receiver [R. 141].

3

filing the Petition could explain why it did not violate paragraph 5(ii) of the Order Appointing Receiver. The attorneys explained that while they were aware of the Order Appointing Receiver, they did not believe Paragraph 5(ii) covered creditor petitions for involuntary bankruptcy. The Court subsequently held that the Petition violated paragraph 5(ii) of the Order Appointing Receiver and declared the Petition void *ab initio* and of no force and effect. As such, the Court determined that the automatic stay did not apply. R. 87.

The Petitioning Creditors and the Board of Commissioners of Rio Grande County, Colorado thereafter filed a motion for reconsideration, arguing that the Order Appointing Receiver's injunctive provisions should not apply to creditors filing involuntary bankruptcy petitions. In the alternative, the Petitioning Creditors sought leave to pursue an involuntary bankruptcy petition.

## Legal Standard

While styled a motion for reconsideration, the Court invited the Petitioning Creditors to submit written briefing so that it could further review the issues raised in the Receiver's emergency motion. The Court will thus consider the Petitioning Creditors' arguments *de novo* rather than under the standard for motions to reconsider.

## Analysis

The Court must answer three questions to resolve the Petitioning Creditors' motion. First, did the filing of the Petition violate paragraph 5(ii) of the Order Appointing Receiver? Second, on the facts of this case, does this Court have the

4

authority to enjoin non-parties from filing involuntary bankruptcy petitions with respect to property in the receivership? And third, should the Court grant the Petitioning Creditors leave to pursue involuntary bankruptcy against SLRG?

I. Did Filing the Petition Violate Paragraph 5(ii) of the Order Appointing Receiver?

The Court first must determine whether filing the Petition violated the Order Appointing Receiver. The Court made its position clear at the October 18, 2019 status hearing, and only briefly readdresses the issue here. Paragraph 5(ii) enjoins "all persons . . . except by leave of the Court" from "commencing . . . any suit or proceeding against or affecting Defendants or any part of the Receivership Assets, except that such actions may be filed to toll any statutes of limitations[.]" R. 19 ¶ 5(ii). The plain language of the injunction belies the Petitioning Creditors' argument that the injunction is ambiguous because it does not specifically list bankruptcies. Indeed, the Petitioning Creditors have not explained how to categorize a bankruptcy if not as a "suit" or "proceeding." The Court thus finds that the injunction applies to bankruptcy petitions.

The Petitioning Creditors also argue that filing the Petition tolled a statute of limitations due to reachback periods. That argument similarly fails. The Petitioning Creditors point to no law that says reachback periods under 11 U.S.C. § 547 qualify as a statute of limitations for purposes of that provision. Nor could they, as parties must file a bankruptcy petition before the reachback period even begins. Moreover, as a practical matter, and as the Receiver points out, a federal receiver has standing to bring fraudulent conveyance claims on behalf of creditors. *See Scholes v. Lehmann*,

5

56 F.3d 750, 753-55. If the Petitioning Creditors believed bankruptcy had advantages over the receivership for dealing with potential fraudulent conveyances, they could have sought leave of Court to file a petition, as paragraph 5(ii) permits. Accordingly, filing the Petition violated the Order Appointing Receiver.

II. Does this Court Have the Authority to Enjoin Non-Parties from Filing Involuntary Bankruptcy Petitions?

Having determined that filing the Petition violated paragraph 5(ii) of the Order Appointing Receiver, the Court turns to the second question: does this Court have the authority to enjoin non-parties from filing involuntary bankruptcy petitions with respect to property in the receivership? In the circumstances of this case, the Court finds that it does.

The Seventh Circuit has not ruled on this question, and both the Petitioning Creditors and the Receiver find support for their positions in cases outside this Circuit. The Petitioning Creditors rely primarily on *Gilchrist v. Generic Electric Capital Corp.*, 262 F.3d 295 (4th Cir. 2001). In that case, Spartan International, Incorporated closed its business and its major creditor commenced a debt-collection action in the District of South Carolina under state law. The district court appointed a receiver for Spartan's assets, and issued an injunction directing "all persons" not to file any action that "affect[ed]" Spartan's assets. *Id.* at 297. A week later, over fifty creditors filed an involuntary bankruptcy petition against Spartan in the Southern District of Georgia. The South Carolina district court declined to recognize the automatic stay imposed by the bankruptcy petition filing, and found the Georgia creditors in contempt of court. On appeal, the Fourth Circuit began its analysis by

6

recognizing that a district court has the authority to protect its jurisdiction over a receivership estate through the All Writs Act, 28 U.S.C. § 1651. *Id.* at 302.[2] The court also recognized a district court's authority to determine its own jurisdiction in deciding whether a statutory stay applies to a proceeding before it. *Id.* at 303. Nevertheless, the Fourth Circuit held that the district court erred in three respects. First, the district court "provided no explanation of why, as a matter of equity, the bankruptcy process was not superior to a receivership in the liquidation of a large business, with assets in several jurisdictions and with thousands of creditors, some of whom were claiming liens superior to the lien relied upon by [General Electric]." *Id.* at 303. Second, the district court "provided no explanation of why the terms of § 362(a) [the automatic stay] were not applicable." *Id.* Third, the appellate court reasoned that even if general equitable principles could modify a statutory jurisdictional grant, it did "not believe that the equities favor the common-law receivership process over the highly developed and specific bankruptcy process" because "[t]he procedural requirements for liquidating a large corporation with thousands of creditors . . . present[s] a task that would push the receivership process to its limits." *Id.* at 304. For all those reasons, the Fourth Circuit reversed and remanded, concluding that:

> While it is true that the district court has broad equity power, any attempt to use that power to supervise a complex corporate liquidation, in the absence of special circumstances, would ultimately be more clumsy and expensive than long-established bankruptcy procedures. At

---

[2] 28 U.S.C. § 1651 provides that "[t]he Supreme Court and all courts established by Act of Congress may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law."

7

> bottom, we are persuaded that in the circumstances of this case, the district court should have recognized the stay provisions of § 362(a).

*Id.*

For its part, the Receiver relies primarily on *SEC v. Byers*, 609 F.3d 87 (2d Cir. 2010). In that case, the SEC alleged that the defendants executed a Ponzi scheme that defrauded investors of $255 million. On the same day the SEC filed its complaint, it also sought and obtained emergency relief to freeze the defendants' assets and appoint a temporary receiver. The receiver order contained an anti-litigation provision that provided in relevant part:

> [n]o person or entity, including any creditor or claimant against any of the Defendants, or any person acting on behalf of such creditor or claimant, shall take any action to interfere with the taking control, possession, or management of the assets, including, but not limited to, the filing of any lawsuits, liens, or encumbrances, or bankruptcy cases to impact the property and assets subject to this order.

*Id.* at 90. After the district court issued a preliminary injunction that incorporated the above language, a group of creditors moved to remove the prohibition against filing bankruptcy petitions, or alternatively to lift the anti-litigation injunction. The district court declined to modify the provision or lift the injunction, and the creditors appealed. On appeal, the Second Circuit affirmed, holding that "while it should be sparsely exercised, district courts possess the authority and discretion to enter anti-litigation orders, including those that bar the filing of involuntary bankruptcy petitions absent the district court's permission." *Id.* at 89. In so holding, the court cited the Ninth and Sixth Circuits, both of which allow similar anti-litigation injunctions. *Id.* (citing *SEC v. Wencke*, 622 F.2d 1363, 1369 (9th Cir. 1990) (holding

8

that a district court may issue an order staying a non-party from bringing litigation against receivership entities except by leave of court), and *Liberte Capital Grp. v. Capwill*, 462 F.3d 543, 551 (6th Cir. 2006) ("To this extent, the receivership court may issue a blanket injunction, staying litigation against the named receiver and the entities under his control unless leave of court is first obtained."). The court also dismissed the creditors' argument that the Bankruptcy Act guarantees the right to file a bankruptcy petition, concluding that "[s]imply put, there is no unwaivable right to file an involuntary bankruptcy petition, and, even if there were, the receivership accomplishes what a bankruptcy would. The receivership protects the assets of the estate, just as a stay would in bankruptcy."

The Petitioning Creditors make two arguments about what distinguishes this case from *Byers*, neither of which persuades the Court. First, they argue that whereas *Byers* dealt with securities fraud, this case arises under state law and state courts cannot enjoin federal bankruptcy filings. True, but although state law applies to the underlying case between Big Shoulders and the Defendants, federal law controls receivership proceedings. The appellate courts to consider the issue have all so held. *See Aviation Supply Corp. v. R.S.B.I Aerospace, Inc.*, 999 F.2d 314, 316 (8th Cir. 1993) ("The appointment of a receiver in a diversity case is a procedural matter governed by federal law and federal equitable principles.") (citing Fed. R. Civ. Pro. 66 and Advisory Committee's Note); *Canada Life Assurance Co. v. LaPeter*, 563 F.3d 837, 842 (9th Cir. 2009) (finding federal, not state, law governs the appointment of a receiver in a diversity action); *Nat'l P'ship Inv. Corp. v. Nat'l Hous. Dev. Corp.*, 153

9

F.3d 1289, 1291 (11th Cir. 1998) ("Of those circuits that have directly addressed the issue, each has held that the appointment of a receiver in a diversity action is governed by federal law.").[3]

Second, the Petitioning Creditors assert that the Second Circuit decided *Byers* in the context of an SEC receivership. But they do not point to any federal securities law that distinguishes an SEC receivership from the receivership here. And in fact, the Ninth Circuit considered and rejected this argument in *Wencke. See Wencke*, 622 F.2d at 1369 ("The power of the district court to issue a stay, effective against all persons, of all proceedings against the receivership entities rests as much on its control over the property placed in receivership as on its jurisdiction over the parties to the securities fraud action."); *see also Pennant Mgmt., Inc. v. First Farmers Fin., LLC*, 2015 WL 4511337, at *4 (N.D. Ill. July 24, 2015) (rejecting that the Ninth Circuit decided *Wencke* based on securities law considerations and holding that a district court's broad equitable powers allow it to stay litigation in other jurisdictions that affect receivership assets); *United States v. Acorn Tech. Fund, L.P.*, 429 F.3d 438, 443 (3rd Cir. 2005) ("The purposes of a receivership are varied, but the purpose of imposing a stay of litigation is clear. A receiver must be given a chance to do the

---

[3] To the extent *SEC v. Huber*, 702 F.3d 903 (7th Cir. 2012), suggests otherwise, that reasoning was dicta and is not binding on this Court. *See U.S. v. Todosijevic*, 161 F.3d 479, 482 n.3 (7th Cir. 1998) ("This ruling was not precedential because it was dicta."). Given the weight of extra-circuit cases directly holding that federal law governs receiverships in diversity cases, this Court declines to consider the *Huber* dicta dispositive here.

10

important job of marshaling and untangling a company's assets without being forced into court by every investor or claimant.").

In reaching their conclusions, both *Byers* and *Gilchrist* emphasized the importance of the specific facts at issue. *See Byers*, 609 F.3d at 92-93 (explaining that while anti-ligation injunctions should be sparsely used, one was appropriate given the circumstances); *Gilchrist*, 262 F.3d at 304 ("we are persuaded that *in the circumstances of this case*, the district should have recognized the stay provisions of § 362(a)") (emphasis added). The facts in this case align more with *Byers* than *Gilchrist*.

In *Byers*, the receiver needed to manage hundreds of entities, many of which had co-mingled assets. The court explained that this entails "precisely the situation in which an anti-litigation injunction may assist the district court and receiver who will want to maintain maximum control over the assets." *Byers*, 609 F.3d at 93. Ultimately, the court concluded that the "current injunction prevents small groups of creditors from placing some entities into bankruptcy, thereby removing assets from the receivership estate to the potential detriment of all." *Id*. That is precisely the situation here. The Receiver is managing numerous entities that sprawl across the United States, each of which has co-mingled assets. A relatively small group of creditors asserting relatively small claims now seeks to put one of the receivership entities into bankruptcy, potentially to the detriment of every other interested party, and at the possible expense of shutting down the railroad. Allowing them to do so

11

would undermine the purpose of the receivership and prevent the Court from adequately protecting the assets of the estate.

In contrast, *Gilchrist* dealt with the liquidation of a large corporation. In reaching its conclusion, the Fourth Circuit repeatedly emphasized that the district court failed to provide any explanation as to why, as a matter of equity, a receivership was superior to the bankruptcy process for a complicated corporate liquidation. *See Gilchrist*, 262 F.3d at 303-04. Unlike the company in *Gilchrist*, SLRG is still operating, and the stated goal of every party that has appeared in this case is to keep the railroad operational. *See* Petitioning Creditors' Motion for Reconsideration, R. 101 at 2 ("Failure of the railroad would be devastating to the local economy and well-being of the residents."). That goal is best obtained in the receivership. Big Shoulders has expressed its willingness to bear the administrative expenses involved with keeping SLRG running. In contrast, if SLRG goes into bankruptcy, that monetary burden would fall on SLRG, further draining its already insufficient funds. No one has offered to pay the cost of a chapter 11 bankruptcy, and no one has suggested how SLRG would afford it. Moreover, the Receiver has indicated that it will sell the railroad as a going concern, and that it has already identified potentially interested buyers. That work may prove wasted if the bankruptcy process commences. In addition, the Petitioning Creditors do not dispute that the receivership entities have co-mingled assets, yet they only filed an involuntary bankruptcy against SLRG. It would require expensive forensic accounting to disentangle SLRG's assets from those of its affiliates, a drain on time and money that appears particularly wasteful

12

considering that all the affiliated companies have already consented to the receivership's control. Finally, the receivership exists for the benefit of all creditors, and the Court must approve the Receiver's decisions. *See Byers*, 609 F.3d at 92 (explaining that "the receivership accomplishes what a bankruptcy would. The receivership protects assets of the estate, just as a stay would in bankruptcy"). The Court has been satisfied with the Receiver's management and transparency thus far, and every party that has moved to intervene, file a motion, or speak at a status hearing has been permitted to do so. If a creditor or other interested party becomes unsatisfied with the Receiver's process or transparency, they may raise the issue with the Court. And if there are any concerns that the Receiver may stray too far from accepted bankruptcy procedures, Local Rule 66.1 specifically provides that the administration of estates by receivers shall be similar to that in bankruptcy cases.

Everyone in this case recognizes the importance of SLRG to its region's residents and economy. And the Receiver is currently working in cooperation with SLRG and its affiliates to ensure the railroad's continued operation. Dragging SLRG into bankruptcy would remove assets from the receivership estate, derail the Receiver's progress thus far, and threaten SLRG's ongoing existence – the exact outcome the parties seek to avoid. And unlike *Gilchrist*, the receivership offers a superior method than bankruptcy to keep the railroad operational and maximize the estate's value for all interested stakeholders. Therefore, the Court finds that, given the circumstances of this case, it has the authority to enjoin nonparties from filing an involuntary bankruptcy petition against SLRG or the other receivership entities.

III. Should the Court Grant the Petitioning Creditors Leave to Pursue Involuntary Bankruptcy against SLRG?

The above analysis does not end the matter because the Petitioning Creditors have already filed the Petition and this Court does not have authority to order the bankruptcy court to cede its jurisdiction. *See Gilchrist*, 262 F.3d at 304-05. As such, this Court incorrectly ruled that the Petition was *void ab initio*, and the Petition remains pending in the bankruptcy court in Colorado. The Petitioning Creditors' motion for leave to file an involuntary bankruptcy petition is thus moot.

Nevertheless, this Court has complete jurisdiction over the property in the receivership estate, *see* 28 U.S.C. § 754 ("A receiver appointed in any civil action or proceeding involving property . . . situated in different districts shall . . . be vested with complete jurisdiction and control of all such property with the right to take possession thereof."), the authority to protect that jurisdiction, *see Liberte*, 462 F.3d at 551 ("Once assets are placed in a receivership, a district court's equitable purpose demands that the court be able to exercise control over claims brought against those assets."), and the authority to enforce its injunctive orders. *See W.R. Grace & Co. v. Local Union 759, Int'l Union of United Rubber*, 461 U.S. 757, 766 (1983) ("An injunction issued by a court acting within its jurisdiction must be obeyed until the injunction is vacated or withdrawn.").[4] Because the receivership offers a superior

---

[4] Unlike the creditors in *Gilchrist*, the *Byers* creditors did not file a bankruptcy petition before they appealed. As such, the *Byers* court did not need to explicitly consider the effects of an automatic bankruptcy stay on its jurisdiction to proceed. That explains why *Byers* more generally held that the court may enjoin bankruptcy filings, whereas *Gilchrist* more specifically held that the district court should have

14

method than bankruptcy to manage SLRG's assets and keep the railroad operational, and the Court has the authority to enjoin the Petitioning Creditors from filing an involuntary bankruptcy petition, the Petition should be dismissed by the Petitioning Creditors. Meanwhile, this case and the receivership moves forward.

## Conclusion

For the reasons stated above, the Petitioning Creditors' motion for reconsideration or, in the alternative, for an order granting leave to file a petition [R. 101] is granted in part and denied in part.

ENTERED:

*Thomas M Durkin*

Honorable Thomas M. Durkin
United States District Judge

Dated: November 18, 2019

---

recognized the stay in the circumstances of that case. Inherent to the *Byers* holding, however, is that if a party violated the anti-litigation injunction by filing a bankruptcy petition, the automatic stay would not affect the court's jurisdiction over the receivership estate. Concluding otherwise would mean that a court could enjoin non-parties from filing bankruptcy petitions, but then be powerless to enforce that order (and retain control over the receivership assets) should a party choose to ignore it.